UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION


UNITED STATES OF AMERICA


-vs-                                               Case Nos.   5:02-cr-3-Oc-10GRJ
                                                               5:03-cv-311-Oc-10GRJ


LARRY CURTIS MOORE
_____/

## REPORT AND RECOMMENDATION[1]

This matter is before the Court on the Order of Reference (Doc. 4), which

referred to the undersigned, Defendant's Motion Under 28 U.S.C. § 2255 To Vacate,

Set Aside, Or Correct Sentence By a Person In Federal Custody. (Doc. 1.) Defendant

also filed a supplement to his petition, in which he raised a *Blakely* issue. (Doc. 19.)

After the United States filed a response to Defendant's original motion (Doc. 9) the

Court conducted an evidentiary hearing and, accordingly, this matter is now ripe for

decision.[2] For the reasons discussed below the Defendant's Motion Under 28 U.S.C. §

2255 To Vacate Or Set Aside The Judgment And Sentence is due to be **DENIED**.

## I. BACKGROUND AND FACTS

Defendant was indicted with three co-defendants in a two count indictment

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. §636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] The evidentiary hearing originally was scheduled by the Court to be held on April 20, 2004. However, because of the Defendant's poor health he was required to undergo triple bypass surgery, which prevented him from physically being able to travel. The evidentiary hearing eventually was conducted on January 19, 2005 after the Defendant had recovered from the surgery and was transported from the federal correctional facility in Loretto, Pennsylvania to this district for the hearing.

charging him with conspiracy to distribute 1,000 kilograms of marijuana in violation of 21

U.S.C. § 846 and possession, and aiding and abetting th possession, with intent to

distribute 100 or more kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(B) and 18 U.S.C. § 2.  The Defendant entered a guilty plea to the conspiracy

charge on March 22, 2002 pursuant to a written plea agreement. The plea agreement

contained a waiver of the Defendant's right to appeal his sentence, other than in several

narrow circumstances, none of which apply to this case. Thereafter, the Defendant was

sentenced to 168 months of imprisonment. Consistent with the terms of the plea

agreement the Defendant did not file a direct appeal.

On September 24, 2002, the Defendant filed a *pro se* Petition for Mitigation of

Sentence, claiming he entered his guilty plea based on the alleged promise by his

defense counsel that he would receive a six year sentence. The Court construed

Defendant's motion as a motion pursuant to 28 U.S.C. § 2255, and advised the

Defendant that he could choose to supplement the motion within the one year statute of

limitations. Thereafter, on August 14, 2003 the Defendant filed the petition presently

pending before the Court. In his petition the Defendant claims that the United States: (1)

breached the plea agreement by failing to inform the Court of the extent of his

cooperation, and (2) failed to accurately notify the Defendant that a statutory minimum

mandatory sentence applied to his case. Based on these allegations, the Defendant

seeks to withdraw his guilty plea arguing that the plea was not knowing and voluntary.

Defendant also claims that his Sixth Amendment rights were violated because of

ineffective assistance of counsel by the Assistant Federal Public Defender, who was

appointed to represent him in this case. Defendant claims that his attorney provided

ineffective representation because his attorney coerced him into entering a plea of guilty by promising him that he would receive a sentence of six years. Defendant also claims that his attorney provided ineffective representation at sentencing. Lastly, the Defendant claims that his attorney failed to file a notice of appeal even though he requested that his attorney do so. In the supplemental petition the Defendant claims that his conviction should be vacated because his sentence was enhanced under the Sentencing Guidelines in violation of *Blakely v. Washington.*[3] The Court set an evidentiary hearing on the limited issue of Defendant's claim of ineffective assistance of counsel concerning his counsel's alleged failure to file a notice of appeal despite his request that his counsel do so. All of the other grounds raised by Defendant can be addressed adequately by reference to matters that appear of record.

At the evidentiary hearing the United States presented the testimony of Assistant Federal Public Defender, Rick Carey. The Defendant, himself, also presented testimony to the Court.

The Defendant testified that he had not discussed or raised with Mr. Carey prior to the imposition of the sentence the issue of the Defendant's right to appeal. However, after the sentenced had been imposed the Defendant represented he had called Mr. Carey from the Marion County Jail and asked Mr. Carey to appeal the sentence. According to Defendant, Mr. Carey advised him that he could not appeal because he had a ten year minimum mandatory sentence. Defendant testified that this telephonic conversation with Mr. Carey took place either the same day or the day after the

---

[3] _ U.S. _, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

sentencing. Although the Defendant testified that he believed he had meritorious grounds for appeal he did not provide any testimony as to the factual basis for any such grounds. Other than this one telephone conversation the Defendant testified that he did not have any further discussions with Mr. Carey after that date regarding an appeal.

On cross examination the Defendant conceded - after first denying that he had sent any correspondence to Mr. Carey - that on or around June 6, 2003 the Defendant sent a letter to Mr. Carey in which he inquired as to the status of his appeal.[4] According to the Defendant, between the date of his telephone conversation on or around the end of August 2002 and June 6, 2003, the date of the letter, the Defendant did not have any other discussions with Mr. Carey.

The United States presented the testimony of Mr. Carey. Mr. Carey is the Assistant Federal Public Defender responsible for the Ocala Division. He has been practicing criminal law for approximately twenty-five years and is a highly experienced and seasoned federal practitioner. Between approximately 1980 and 1989 Mr. Carey served as an Assistant State Attorney for the Eleventh Judicial Circuit in Miami for a couple of years and then served as an Assistant State Attorney in Ocala until approximately 1989. In 1989 Mr. Carey was appointed as an Assistant United States Attorney in the Southern District of Florida where he served in the Miami office until August of 2000 when he was appointed as an Assistant Federal Public Defender in the Middle District of Florida, stationed in Ocala. During the course of his service as an Assistant United States Attorney Mr. Carey has been involved as lead counsel in

---

[4] Government Ex. "1".

4

hundreds of criminal cases. In addition, Mr. Carey has represented as lead counsel
scores of defendants in cases pending in this District, many of which involved drug
related crimes, like the instant case.

According to Mr. Carey, it is his customary practice as an Assistant Federal
Public Defender to meet with clients to go over plea agreements and explain to them
the plea agreements that they will be signing. Mr. Carey was appointed to represent the
Defendant in this case on February 1, 2002 at the initial appearance. Since Mr. Carey
began to serve as an Assistant Federal Public Defender he has continuously maintained
a phone log book that sits on his desk. It is his practice with regard to all telephone calls
- whether he speaks with the defendant, a family member, a third party or the
government - to make a notation in the margin of the time of the call, the name of the
defendant and a brief summary of the particulars of the call. Further, in those instances
in which the telephone call is with the defendant, it is Mr. Carey's customary practice to
make a notation with a red star next to the entry to denote that he actually
communicated with the defendant.

With regard to the plea agreement entered into between the Government and the
Defendant, Mr. Carey testified that he reviewed the plea agreement with the Defendant
in a face to face meeting at the county jail during which he reviewed the salient parts of
the plea agreement page by page. As part of the review of the plea agreement with the
Defendant, Mr. Carey discussed with the Defendant the maximum penalties including
the minimum mandatory sentence that applied to the charges in this case. Mr. Carey
also discussed with the Defendant the waiver of appeal in the plea agreement and
explained to the Defendant that his right to appeal was very limited other than with the

5

four narrow exceptions mentioned in the plea agreement. Mr. Carey testified that he advised the Defendant that the only exceptions to the waiver of appeal were if the Court upwardly departed under the guidelines, if the government filed an appeal or if the safety valve became an issue.

At the sentencing hearing one of the main issues advanced by Mr. Carey was an objection to a two level assessment for the Defendant being considered a manger, organizer or leader of the criminal enterprise. Mr. Carey was successful on his objection and the Court did not assess the additional two levels as set forth in the presentence investigation report.

Prior to the date of the sentencing, as reflected in Mr. Carey's log book, he had accepted eight collect telephone calls from the Defendant. After sentencing, Mr. Carey's log reflects that the next telephone call from the Defendant was on September 3, 2002. During that telephone call the Defendant inquired as to whether a 5K1. motion for substantial assistance was going to be forthcoming. Mr. Carey promised to call the prosecutor to obtain an update on whether the Government would be filing a 5K1. Notably, Mr. Carey testified that during the September 3, 2002 telephone conversation with the Defendant there was never any mention, whatsoever, of an appeal. Mr. Carey testified that during the ten day period after the sentencing the Defendant never instructed Mr. Carey to file an appeal and never had any discussions with Mr. Carey concerning the Defendant's desire to pursue appellate remedies.

The first time that Mr. Carey received any communication from the Defendant with regard to an appeal was on June 12, 2003, when he received the June 6, 2003

letter from the Defendant inquiring for the first time about the Defendant's appeal.[5] Immediately upon receipt of the June 3, 2003 letter, Mr. Carey reviewed his phone log which did not disclose any notation of a discussion with the Defendant concerning pursuit of an appeal. Consequently, Mr. Carey prepared and sent a letter to the Defendant - dated that same day, June 12, 2003 - in which Mr. Carey acknowledged receipt of Defendant's June 3, 2003 letter and expressly told the Defendant that no appeal was filed challenging the sentence because the Defendant had never requested Mr. Carey to file an appeal. In the letter Mr. Carey reminded the Defendant that the plea agreement contained a waiver of the Defendant's right to appeal and that the Defendant had received a sentence at the low end of the reduced guideline range.[6]

The only other communication received by Mr. Carey from the Defendant was a copy of the *pro se* Petition For Mitigation of Sentence, the Defendant filed on or around September 19, 2002.[7] The Defendant sent a copy of the Petition For Mitigation of Sentence with a letter to Mr. Carey in which the Defendant advised that he had filed the petition for mitigation, wanted to know why he did not receive a six year sentence and requested a copy of the plea agreement. There is no mention or reference in the letter concerning an appeal nor any complaint concerning the fact that no appeal had been filed. Between the date of that letter and the date of the June 3, 2003 letter Mr. Carey testified that he never visited the Defendant in prison and did not have any written or

---

[5] Government Ex. "1".

[6] The recommended guideline sentence was 210-262 months. The Defendant was sentenced to 168 months, the low end of the reduced guideline range of 168-210 months.

[7] Government Ex. "3".

oral communications with the Defendant.

## II.  LEGAL ANALYSIS

## A.  Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel are subject to the two-prong analysis set out by the Supreme Court in Strickland v. Washington.[8] To make out a successful claim, Petitioner must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.[9]  In order to establish prejudice in a case where the defendant entered a guilty plea, the Petitioner must show a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty.[10]  The Court will first address Defendant's claim of ineffective assistance as to the failure to file a notice of appeal and then will briefly address Defendant's claims of ineffective assistance as to sentencing.

### 1.    Alleged Failure to File a Notice of Appeal

Although the right to appeal is not necessarily a constitutional right, there is little question that failure to pursue an appeal results in the denial of a proceeding altogether, thus implicating a denial of due process.[11]

In examining whether there is defective performance by counsel under the first prong of *Strickland* - where the claim of ineffective assistance of counsel, as here, is

---

[8]  466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

[9]  *Id.* at 687, 104 S.Ct. at 2064.

[10]  Hill v. Lockhart, 474 U.S. 52, 57-59 (1985); *see also,* Yordan v. Dugger, 909 F.2d 474, 477-78 (11th Cir. 1990).

[11]  Martinez v. Court of Appeal of California, 528 U.S. 152, 120 S.Ct. 684 (2000).

8

premised on the failure to file an appeal - the inquiry begins with the question of whether counsel consulted with the defendant about an appeal.[12] If counsel has discussed with the defendant the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes, counsel performed in a professionally unreasonable manner only if counsel failed to follow the defendant's express instructions to file an appeal.[13] If it is determined that "counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary question: whether counsel's failure to consult with the defendant itself constitutes deficient performance."[14] However, "counsel only has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."[15]

Based on the evidence presented the Court determines that Defendant has failed to show deficient performance by Mr. Carey because Mr. Carey "consulted" with the Defendant and the weight of the evidence does not show that the Defendant expressly instructed counsel to file an appeal.

Mr. Carey expressly testified that he reviewed with the Defendant the waiver of

---

[12] Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029 (2000).

[13] *Id.* at 528 U.S. 478, 120 S.Ct. 1035.

[14] *Id.*

[15] *Id.* at 528 U.S. 480, 120 S.Ct. 1036.

the Defendant's right to appeal his sentence, and advised him that he had waived his right to appeal other than in very limited circumstances, which were contained in the plea agreement executed by the Defendant. Consequently, the Defendant was made well aware of the disadvantages of pursuing an appeal and thus the Court concludes that counsel "consulted" with the Defendant as explained in *Flores-Ortega*.[16]

Having found that Mr. Carey consulted with the Defendant, the only remaining way the Defendant can prove that counsel's performance was deficient is by establishing that his attorney failed to follow the Defendant's express instructions. On this issue the evidence presented at the hearing left little doubt that the Defendant never instructed Mr. Carey, at any time, to file an appeal. The only evidence presented by the Defendant on this point was his own testimony that either on the day of the sentencing or on the day after the sentencing he allegedly *telephoned* Mr. Carey and advised him to file an appeal. This testimony lacks any indicia of credibility when viewed against the other evidence presented at the hearing.

First - and most telling - Mr. Carey testified that he maintains a phone log of every telephone call with all of his clients, including the Defendant, and that there is no record of the Defendant telephoning Mr. Carey on the day of the sentencing or on the day after the sentencing. The only record of a telephone call was on September 3, 2002. According to Mr. Carey, during this telephone conversation the only topic discussed was the status of any 5K.1 motions by the Government. Mr. Carey testified that there was no discussion whatsoever of an appeal in that conversation.

---

[16] *Id.* 528 U.S. 478("We employ the term 'consult' to convey a specific meaning –advising the defendant about the advantages and disadvantages of taking an appeal ...").

Additionally, the next communication by the Defendant to Mr. Carey was the letter dated September 19, 2002 in which the Defendant enclosed a copy of his *pro se* Petition for Mitigation with the letter.[17] There is absolutely no mention or reference in the letter to an appeal, the status of an appeal or the grounds for an appeal. This date was well past the ten day window within which to file an appeal. It is reasonable to assume had the Defendant indeed instructed his attorney to file an appeal, there would have been some mention or reference to the appeal in the letter.

Lastly, to be sure, between September 19, 2002 and June 6, 2003 - a period of more than nine months - the Defendant never telephoned Mr. Carey or even wrote a simple note to inquire as to the status of the alleged appeal. Indeed, when Defendant for the first time on June 6, 2003 mentioned an appeal, Mr. Carey promptly reminded him that he had not filed an appeal because the Defendant had waived his right to appeal.

In sum, Defendant's unsupported statement that he telephoned Mr. Carey and instructed him to file an appeal is inconsistent with the fact that there is no record of a telephone call on the day Defendant says he called and if Defendant had instructed Mr. Carey to file an appeal there would have been some mention of an appeal in the nine months between September 2002 and June 2003, either by the Defendant or through correspondence from Mr. Carey. Indeed, it is more than reasonable to conclude, had Defendant telephoned Mr. Carey on the day after sentencing and instructed him to file an appeal, Mr. Carey would have again reminded the Defendant that he did not have

---

[17] Government Ex. "3".

any grounds to appeal in view of the waiver. Accordingly, for these reasons the Court

concludes that the Defendant has failed to establish deficient performance by his

counsel under the performance prong of *Strickland* and, therefore, Defendant's motion

to vacate his judgment of conviction on this ground is due to be denied.[18]

Alternatively, even if the Court determined that Mr. Carey had not adequately

consulted with the Defendant, Defendant cannot establish that Mr. Carey's performance

was deficient under *Flores-Ortega* because Defendant cannot establish that a rational

defendant would have filed an appeal in the face of an express waiver of appeal, as

here, or that he reasonably demonstrated to Mr. Carey that he was interested in

appealing.

As to the first alternative, there is little question that there were no grounds for an

appeal because of the presence of a waiver of appeal in the plea agreement. The

Defendant was specifically questioned concerning the waiver of appeal during the Rule

11 plea colloquy. Such waivers of appeal are enforceable so long as the court

questioned the Defendant concerning the waiver during the plea colloquy and it is

manifestly clear form the record that the Defendant otherwise understood the

significance of the waiver.[19] Here, not only was the Defendant advised by the Court

during the plea colloquy that he had waived his right to appeal his sentence, but his own

lawyer testified that he also discussed with the Defendant that the Defendant had

---

[18] Even if Defendant was able to establish ineffective assistance of counsel with regard to the failure to file an appeal the remedy is simply to vacate the judgment of conviction so that the Defendant can then file a timely appeal. As previously, mentioned because the Defendant has waived his right to appeal his appeal would be dismissed summarily based on his waiver.

[19] United States v. Bushert, 997 F.2d 1343, 1351 (11th Cir. 1993).

waived his right to appeal other than in very limited circumstances. In view of the broad

wavier language it follows that a rational defendant would not have wanted to pursue an

appeal.

Additionally, as previously discussed in detail, there was no credible evidence

presented that the Defendant reasonably demonstrated to Mr. Carey that he was

interested in appealing, other than the unsupported and naked statement by the

Defendant that he told Mr. Carey to file an appeal during a telephone call in which there

is no record of the telephone call having been placed.

Accordingly, for all of these reasons the Court concludes that Defendant's motion

to vacate his sentence as to his claims of ineffective assistance of counsel for failing to

file a notice of appeal is due to be denied.

### 2.   Counsel's Performance at Sentencing

As a threshold consideration, Defendant's claim of ineffective assistance as it

relates to conduct at sentencing has been waived because the Defendant executed a

waiver of appeal as part of the plea agreement in this case. While not definitely settled

in the Eleventh Circuit, the cases are legion from other circuits in holding that claims of

ineffective assistance of counsel are waived and survive only if counsel's performance

directly affects the validity of the plea itself.[20]

However, even if Defendant's claim has not been waived there is no merit to

---

[20] *See,* United States v. White, 307 F.3d 336, 343 (5th Cir. 2002); Davila v. United States, 258 F.3d 448, 451 (6th Cir. 2001)(reviewing only claims of ineffective assistance attacking the validity of the waiver itself); DeRoo v. United States, 223 F.3d 919, 923-24 (8th Cir. 2000); United States v. Cockerham, 237 F.3d 1179, 1187 (10th Cir. 2001), *cert denied*, 122 S.Ct. 821 (2002); Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000), *cert denied,* 531 U.S. 1175 (2001); United States v. Djelevic, 161 F.3d 104, 107 (2nd Cir. 1998)(if the complaint underlying the ineffective assistance claim was waived by a defendant's plea agreement, then the ineffective assistance claim was also waived).

Defendant's challenge to his attorney's conduct with regard to sentencing. Defendant complains that his attorney wrongly advised him that he would receive a six year sentence.

This challenge is belied by the weight of the record in this case. First, the Defendant was expressly advised during the Rule 11 plea colloquy that he faced a minimum mandatory term of imprisonment of ten years. This fact was clearly spelled out in the plea agreement itself. Moreover, the Defendant advised the Court during the plea colloquy that he understood the maximum penalties including the minimum mandatory sentence that applied.

During sentencing Defendant's counsel successfully argued that the Defendant's sentence should not be enhanced two levels based on Defendant being considered a leader, manager or organizer of the criminal enterprise. There was nothing else Defendant's counsel could have argued that would have changed the result. Indeed, the Defendant ultimately received a sentence at the low end of the guideline range. Accordingly, Defendant's claim of ineffective assistance of counsel at sentencing is without any factual basis or merit and is due to be rejected.

## B.      Withdrawal of Guilty Plea

Defendant asserts that his plea of guilty was not made knowingly and voluntarily and/or the Government breached the plea agreement because: (1) he was not advised of the mandatory minimum sentence that applied to the charges in this case, (2) he did not receive any reduction for substantial assistance, and (3) he was not advised of the weight of the drugs attributable to him nor was he advised of the possibility of an

14

enhancement for possession of a firearm. As discussed below, each of these claims are directly contradicted by the record and are without merit.

First, with regard to the mandatory minimum, the plea agreement expressly states that the Defendant was exposed to a mandatory minimum term of imprisonment of ten years to life imprisonment. Moreover, during the plea colloquy in this case the Court expressly informed the Defendant of the maximum penalties including the mandatory minimum. The Defendant advised the Court under oath during the plea colloquy that he understood the potential penalties. Accordingly, there is no merit to Defendant's claim that he did not know and understand what he was facing when he pled guilty in this case.

Similarly, with regard to substantial assistance the Defendant was advised during the plea colloquy that the determination of whether his cooperation would merit a reduction in sentence was in the sole discretion of the United States Attorney. Moreover, the Defendant does not even suggest that he provided any cooperation that would qualify him for a reduction in sentence. Therefore, there is nothing to support this claim by the Defendant.

Lastly, with regard to Defendant's claim that the sentence violates the plea agreement because the plea agreement did not specifically address relevant conduct and an enhancement for possession of a firearm, the Defendant's argument is without any merit. The Defendant was advised that he would be held accountable for conduct that is not the subject of the conviction. Additionally, during the plea colloquy the Defendant did not express any material disagreement with the factual basis for the plea or any of the provisions of the plea agreement, which included a forfeiture provision of a

15

number of firearms that belonged to Defendant.

The declarations of a defendant in open court - under oath - carry a strong presumption of verity which is not overcome by the subsequent presentation of conclusory and contradictory allegations.[21] When a defendant, as here, makes representations at a plea hearing and based thereon the Court makes findings it constitutes "a formidable barrier in any subsequent collateral proceedings."[22] The Defendant's bald assertions that he did not understand the consequences of his plea are contradicted by the record of the Defendant's sworn statements to the contrary at the plea colloquy. Accordingly, Defendant's arguments challenging the plea in this case have no support and are due to be denied summarily.

## C.   Supplemental Challenge Based on Blakely

Lastly, in Defendant's Supplemental Pleading (Doc. 19), Defendant seeks to challenge his sentence under *Blakely v. Washington.* Defendant's supplemental grounds are due to be rejected because the Eleventh Circuit has expressly held that challenges to a sentence under *Blakely* do not apply retroactively to cases on collateral review.[23] Accordingly, Defendant's motion to set aside his sentence on this ground is due to be denied.

---

[21] United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n. 8 (11th Cir. 1987).

[22] Blackledge v. Allison, 431 U.S. 63, 74 (1977).

[23] Varela v. United States, 400 F.3d 864 (11th Cir. 2005).

16

## III.  <u>RECOMMENDATION</u>

In view of the foregoing it is respectfully **RECOMMENDED** that Defendant's

Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A

Person In Federal Custody (Doc. 1) be **DENIED**.

**IN CHAMBERS** at Ocala, Florida this 13th day of May, 2005.

_____
GARY R. JONES
United States Magistrate Judge

Copies to:
      Honorable Wm. Terrell Hodges
      Senior United States District Judge

      United States (Brown)
      Counsel for Defendant
      Defendant